**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lori Jo Giddings,<br><br>    Plaintiff,<br><br>vs.<br><br>Vision House Production, Inc., Vision House Production, Inc., d/b/a Designer Art Direct, Cindy Rarig, individually and d/b/a/ Designer Art Direct, Jonathan Rarig, individually and d/b/a Designer Art Direct, and John/Jane Does I through V, whose true identities are presently unknown,<br><br>    Defendant. | No. CV-05-2963 PHX MHM<br><br>**ORDER** |

    Currently before the Court is: (1) Defendants'[1] Motion for Summary Judgment (Dkt.#68), (2) Plaintiff's[2] Motion for Summary Judgment as to Liability of Defendants (Dkt.#70), and (3) Defendants' Motion for Sanctions Against Plaintiff and Counsel (Dkt.# 81). After reviewing the papers and deeming oral argument regarding the Motion for Sanctions unnecessary,[3] the Court issues the following Order.

---

    [1] "Defendants" include Vision House Production, Inc., Cindy Rarig, and Jonathan Rarig.

    [2] "Plaintiff" includes Lori Jo Giddings.

    [3] No oral argument was requested regarding the Motions for Summary Judgment.

**I. Procedural History**

On September 27, 2005, Plaintiff Lori Jo Giddings asserted a four-count complaint against Defendants asserting copyright infringement and three other claims. (Dkt.#1) The three other claims were dismissed with prejudice because they were preempted by the copyright infringement claim and because of Plaintiff's lack of standing regarding one of the claims. (Dkt.#24) The Rule 16 Scheduling Conference was held on September 20, 2007 and the deadline for all dispositive motions was set for March 21, 2008. (Dkt.# 31) On January 14, 2008, the Court granted a thirty-day extension of all pretrial deadlines, making the deadline for all dispositive motions due by April 21, 2008. (Dkt.#40) On this deadline, the parties filed the motions for summary judgment that are presently before this Court. (Dkt.#68,70) Defendants moved for sanctions against plaintiff and counsel on July 15, 2008. (Dkt.#81) The Court will first address the summary judgment motions and then address the motion for sanctions.

**II.     Summary Judgment Motions**

Defendants move for summary judgment on Plaintiff's copyright infringement claim; Plaintiff moves for summary judgment regarding Defendants' liability only on this claim.

**A. Factual Background**

Plaintiff is an artist; this case involves twelve of her paintings: "Iron Cowboy," "Cowboy at Rest," "Just Relax," "Superbowl Cowboy," "Golf Cowboy," "Fixin to Rain," "Ellie Mae," "Let's Play," "Takin a Break," "Cowboy Paraphernalia," "Holdin On," and "Champion." From 1996 to 1998, Plaintiff sold prints and originals of these paintings in her gallery in Scottsdale.

In 1998, Plaintiff closed the gallery and entered into an agreement with Cindy and Jonathan Rarig for the reproduction and distribution of her work. From 1998 to June 16, 2001, the Rarigs sold Plaintiff's artwork through Vision House Productions, a music production company they owned. They also sold prints of Plaintiff's art to or through The Room Store, Costco, and Sam's Club. However, in June 2001, the relationship soured and the parties agreed to part ways. This case concerns their disagreement about how the

1 remaining inventory of Plaintiff's prints were divided; Defendants contend that they owned
2 several of Plaintiff's prints based on a $500 monthly advance on future royalties (25% of the
3 selling price) that they had paid Plaintiff.  Because sales sufficient to cover this monthly
4 advance never materialized, Defendants claim that they had purchased several of Plaintiff's
5 prints to make up the difference.  Plaintiff denies that this arrangement ever existed and also
6 contends that all of the prints belonged to her.  She contends that Defendants continued to
7 make unauthorized reproductions of her work and to display her originals without her
8 permission in their store and on their internet site, as well as forging her signature on the
9 prints.  Defendants argue that they owned the prints that they continued to sell, that they
10 owned the originals that were displayed in their store and that their internet site merely
11 contained a representation of one of her works as an example of the types of artists with
12 whom they had worked.

13 On September 27, 2005, Plaintiff filed this action, alleging that Defendants had infringed
14 her copyright of the paintings beginning in June 2001 and "continuing to the present time."
15 (Dkt.#1 ¶ XIX)  Her Amended Complaint alleged that Defendants sold unauthorized
16 reproductions of her work in January 2001, summer and fall of 2002, fall of 2003, November
17 of 2004, and September 2005 and that during the summer of 1999 through the spring of
18 2000, Cindy Rarig forged her signature on various pieces of copyrighted artwork. (Dkt.#19
19 ¶¶ XXXVI - XLI)

20 **B.    Summary Judgment Standard**

21 A motion for summary judgment may be granted only if the evidence shows "that
22 there is no genuine issue as to any material fact and that the moving party is entitled to
23 judgment as a matter of law." FED. R. CIV. P. 56(c).  The Court views the evidence in the
24 light most favorable to the nonmoving party and draws any reasonable inferences in the
25 nonmoving party's favor. See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995),
26 *cert. denied*, 516 U.S. 1171 (1996).  A material issue of fact is one that affects the outcome
27 of the litigation and requires a trial to resolve the differing versions of the truth.  S.E.C. v.
28 Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  To defeat the motion, the non-

moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**C. Defendants' Motion for Summary Judgment**

Defendants present five different grounds for their summary judgment motion; however, the Court finds the first two grounds case dispositive and thus will not address the remaining three grounds in this order. The Court addresses first the effect of Plaintiff's failure to register three of the paintings; next, it addresses the consequence of Plaintiff's lack of ownership of the nine remaining paintings during the period of the alleged infringement.

**1. The Three Unregistered Paintings**

The parties agree that Plaintiff has never registered three of the twelve paintings in dispute, "Let's Play," "Champion," and "Hold On." (Dkt.#69 ¶ 15; Dkt.# 73-3 ¶ 15) While Defendants argue that this failure amounts to a jurisdictional defect, Plaintiff contends that an artist's rights to attribution and integrity do not require registration, citing for the first time to 17 U.S.C. § 106A(a).

Under 17 U.S.C. § 411(a), no infringement action based on a violation of exclusive rights may be brought until the copyright is registered. Kodadek v. MTV Networks, 152 F.3d 1209, 1211 (9th Cir. 1998) ("Copyright registration . . . is a prerequisite to a suit based on copyright.") Exempted from this requirement are actions brought under 17 U.S.C. § 106A(a), which protect the author's rights to attribution and integrity. Thus, whether an infringement action for these three paintings may proceed depends on whether Plaintiff should be allowed to change her theory of infringement at this late stage, asserting the new moral rights theory for the first time in her response to Defendants' Motion for Summary Judgment. Up to this point, Plaintiff had relied solely on an exclusive rights theory,

objecting to Defendants' alleged unauthorized reproduction and distribution of the paintings in the Amended Complaint.

> Since approximately June 2001 and continuing to the present time defendants have been infringing on plaintiff's copyright and plaintiff's artwork by **reproducing and distributing** in the stream of commerce without plaintiff's permission unauthorized **reproductions** of plaintiff's artwork.

(Dkt.#19 ¶ 19 (emphasis added))

Helpful to this analysis is Coleman v. Quaker Oats Company, 232 F.3d 1271 (9th Cir. 2000), in which employees suing under the Age Discrimination in Employment Act changed their theory from disparate treatment (which they had alleged in the complaint and relied on throughout discovery) to disparate impact (which had never been raised before the summary judgment stage). Though both disparate treatment and disparate impact are theories that are found in the act, the district court refused to allow the employees to rely on the new theory at the summary judgment stage, reasoning that the employer was prejudiced by the lack of disclosure regarding this theory. The Ninth Circuit affirmed, explaining that "[a]fter having focused on intentional discrimination in their complaint and during discovery, the employees cannot turn around and surprise the company at the summary judgment stage on the theory that an allegation of disparate treatment on the complaint is sufficient to encompass a disparate impact theory of liability." Id. at 1292-93. Where a plaintiff sets forth one theory in the complaint and does not move to amend until summary judgment proceedings, it is barred from proceeding on a new theory. Id. at 292.

Applying Coleman to the present case, Plaintiff is precluded from asserting her new moral rights theory of infringement at this late stage of litigation, over six months after the deadline for discovery has passed. (Dkt.#40, 31) The Court construes Plaintiff's attempt to do so as an untimely motion to amend the pleadings under Federal Rule of Civil Procedure 15(a). In re Stratosphere Corp. Sec. Litig., 66 F.Supp.2d 1182, 1201 (D. Nev. 1999) ("When new issues or evidence supporting a legal theory outside the scope of the complaint is introduced in opposition to summary judgment, a district court should construe the matter as a request to amend pleadings . . . ."). Here, the deadline to amend the complaint passed

on November 16, 2007. (Dkt.# 31) Because permitting an amendment now, nearly a year later would prejudice Defendants (who would not be able to conduct discovery regarding this issue), the motion to amend the complaint to include Plaintiff's new moral rights theory is denied. Eagle v. American Tel. & Tele. Co., 769 F.2d 548 (9th Cir. 1985) (where pretrial status conference order precluded amendments after certain deadline, district court correctly denied use of new theory at summary judgment stage).

Because plaintiff cannot amend the complaint at this phase of litigation to include her new moral rights theory, she is limited to the unauthorized reproduction and distribution theory of copyright infringement that she alleged in the Amended Complaint. (Dkt.#19 ¶ 19) Because this theory requires copyright registration, and it is undisputed that Plaintiff did not register "Let's Play, "Champion," and "Holdin' On," these three paintings are outside this Court's subject matter jurisdiction. 17 U.S.C. § 411(a); In re Literary Works in Electronic Databases Copyright Litig., 509 F.3d 116, 121 (2d Cir. 2007).

**2. Plaintiff's Lack of Ownership of the Remaining Nine Paintings During the Period of Alleged Infringement**

Regarding the remaining nine paintings, "Iron Cowboy," "Cowboy at Rest," "Just Relax," "Superbowl Cowboy," "Golf Cowboy," "Fixin to Rain," "Ellie Mae," "Takin a Break," and "Cowboy Paraphernalia," Defendants argue that because Plaintiff did not own the copyrights for these paintings during the time of the alleged infringement, she lacks standing. Plaintiff somewhat creatively responds that Defendants have no standing to challenge ownership. Put another way, Plaintiff is arguing that Defendants have no standing to challenge Plaintiff's standing. Plaintiff relies on cases that interpret 17 U.S.C. § 204, which requires that transfers of a copyright be in writing. However, these cases are inapplicable because Defendants are not arguing that the copyright was *not* validly transferred; instead they are arguing that the copyright *was* validly transferred. Thus, the statements in the cases regarding standing to assert a section 204 claim are inapposite. Stated another way, the section 204 argument that a copyright was not validly transferred because it was not in writing has no application here; all the transfers *were* in writing and no party is alleging that any oral transfer of the

1  copyrights took place or that the written transfers were defective in any way.  Plaintiff also
2  argues that her moral rights to attribution and integrity are not transferable; however, as
3  explained above, Plaintiff is precluded from asserting this new theory at this late stage of
4  litigation.

5  Moreover, allowing amendment in this case would be futile; Plaintiff has not alleged that
6  Defendants falsely attributed her work to another artist – she is alleging that they forged her
7  signatures on the prints.  Thus, there appears to be no violation of the non-transferrable right
8  to attribution.  17 U.S.C. § 106A(a).  Neither has Plaintiff alleged that Defendant defaced,
9  distorted, or otherwise mutilated her artwork in a manner that would be prejudicial to her
10 reputation; thus, there appears to be no violation of her right to the non-transferrable right to
11 integrity.  Id.  Having considered the factors outlined in Foman v. Davis, 371 U.S. 178, 182,
12 (1962),[4] this Court denies Plaintiff's implied request to amend the pleadings on the grounds
13 that it would unduly prejudice defendant (because defendant would not be able to conduct
14 discovery on this issue given that discovery is over), that it is untimely asserted, and that it
15 would constitute an exercise in futility.

16 The evidence before this Court demonstrates that Plaintiff transferred ownership of the
17 nine remaining paintings to various relatives and to her attorney by 1998, according to a
18 number of Assignment and Transfer documents that appear to be signed by Plaintiff (and
19 whose validity Plaintiff has not challenged).  (Dkt.#69, Exh. D)  The copyright registration
20 for many of these paintings also reflect the new owner (Plaintiff's niece, nephew, or attorney)
21 as the claimant.  (Dkt.#69, Exh. E)  To effectuate the transfers, Plaintiff executed nine
22 Assignment and Transfer of Original Artwork and Copyright documents.  Each assignment
23 provided that Plaintiff transferred all the rights in her work:

> The undersigned [Giddings] does hereby sell, transfer, convey, absolutely assign and set over . . . all right, title and interest in said original mixed media painting . . . including without limitation all copyrights and the right to secure

---

[4] In Foman v. Davis, 371 U.S. 178, 182, (1962), the Supreme Court explained that a court may deny leave to amend a complaint if it finds undue delay or bad faith on the part of the plaintiff, prejudice to the defendant, or futility of the amendment.

> copyright registration and any and all copyright renewal rights and in any works derived therefrom throughout the entire world and any and all rights the assignor now has or to which he may become entitled under existing or subsequently enacted federal, state or foreign law statutes or regulations for or during the full term of said copyright including without limitation the right to produce the artwork and copies of prints, the right to prepare derivative works based on the artwork, the right to distribute copies of the artwork, the right to perform and display the artwork publically.

(Dkt.#69, Exh. D)

Defendants allege that Plaintiff transferred ownership of the nine copyrights in order to keep them out of the reach of the bankruptcy court when she filed for a Chapter 7 bankruptcy in 1997. Though Plaintiff disputes that she had any such motivation, she does not contest the accuracy of the bankruptcy schedules attached to her Bankruptcy Petition, in which she only claimed to have transferred ownership of one of the paintings ("Just Relax") in the previous year and avowed that she did not own any interest in patents, copyrights, or other intellectual property.

Plaintiff claims that she disputes that all of the copyrights were transferred and points to a few bits of information relating to "Iron Cowboy." However, none of her exhibits create a genuine issue of fact regarding this issue. The deposition excerpt she cites actually supports the conclusion that the copyrights were transferred. In the excerpt, there is an exchange where Defendants' counsel ask why the registration for "Iron Cowboy" lists her as the copyright claimant if she needed protection as she had claimed earlier in the deposition. She responds with a statement that actually supports Defendants' argument that she transferred copyright ownership of all her paintings to other people: "I thought that it had been transferred into another name." (Dkt#73-3, Exh. 1 at 15) Moreover, even if the copyright registration dated January 26, 1995 lists Plaintiff as the copyright claimant, this fact does nothing to dispute Defendants' evidence that she later transferred ownership to her niece on November 1, 1996. (Dkt#73-3, Exh. 6) Defendants presented a copy of an assignment signed by Plaintiff that transferred "all right title and interest . . . including all copyrights" in "Iron Cowboy" to Carmi Jo Jenners (Plaintiff's niece) on November 1, 1996. (Dkt.#69 Exh. N) Plaintiff has never asserted that the signature on this assignment was not

1 hers nor claimed that this document was somehow faked. Moreover, Defendants also
2 presented evidence that on February 8, 2008, Plaintiff obtained an assignment of "Iron
3 Cowboy" from her niece, which further corroborates their argument that she did not own the
4 copyright prior to this period. (Dkt.#69 Exh. N)  Plaintiff has never challenged the validity
5 or accuracy of either transferring document.

6   For similar reasons, Plaintiff's general claim, "I own the copyright in each of my pieces
7 of art," is insufficient to create a factual controversy. (Dkt.# 72) Even if Plaintiff *currently*
8 owns the copyright for all of her paintings, this statement does nothing to dispute
9 Defendant's evidence that she did not own them during the period in which she alleges the
10 infringement occurred (June 16, 2001 to the date of the filing of the Complaint, September
11 27, 2005). Thus, there is no genuine issue of fact regarding whether Plaintiff owned the
12 copyrights to the remaining nine paintings during the time period at issue. Defendants have
13 presented evidence that she did not own the copyrights, and Plaintiff has failed to present any
14 evidence that would create a factual dispute over this issue .

15   Moreover, the allegation that Defendants forged Plaintiff's signature on the alleged
16 unauthorized reproductions from summer 1999 through the spring of 2000 would not violate
17 copyright law, but would sound as a trademark claim. A forged signature on artwork is a
18 trademark claim in that the forged signature misleads the public. See 15 U.S.C. § 1114
19 (reproducing a registered mark to cause confusion or deceive constitutes trademark
20 infringement). For reasons similar to those mentioned above, this Court denies Plaintiff's
21 implicit request to amend the complaint to include this theory.

22   A copyright infringement claim requires proof of (1) ownership of a valid copyright, and
23 (2) violation of the copyright-holder's exclusive rights. Feist Publications, Inc. V. Rural
24 Telephone Service Co., 499 U.S. 340, 361 (1991); A&M Records v. Napster, Inc., 239 F.3d
25 1004, 1013 (9th Cir. 2001). If a claimant does not own a copyright, the claimant does not
26 have standing to sue for infringement of the exclusive rights belonging to the owner. Silvers
27 v. Sony Pictures Entm't, Inc., 402 F.3d 881, 889 (9th Cir. 2005) ("[O]nly the owner of an
28 exclusive right under the copyright is entitled to sue for infringement.") Moreover, the owner

- 9 -

1  of the copyright must have owned the copyright at the time the alleged infringement took
2  place. The "owner of an exclusive right under a copyright is entitled . . . to institute an action
3  for any infringement of that particular right committed *while he or she is the owner of it*."
4  17 U.S.C. § 501(b) (emphasis added). Copyright assignments do not include accrued causes
5  of action unless they are expressly included in the assignment. <u>ABKCO Music, Inc. v.</u>
6  <u>Harrisongs Music, Ltd.</u>, 944 F.2d 971, 980 (2nd Cir. 1991) ("[T]he assignee is only entitled
7  to bring actions for infringements that were committed while it was the copyright owner and
8  the assignor retains the right to bring actions accruing during its ownership of the right, even
9  if actions are brought subsequent to the assignment."). This Court's examination of the
10 February 8, 2008 assignments that transferred ownership of the copyrights of the paintings
11 back to Plaintiff (Dkt.# 69, Exh. N) reveals that there was no express transfer of accrued
12 causes of action. Thus, because Plaintiff did not own the copyright to the remaining nine
13 paintings during the time period in which she alleges infringement took place, she has no
14 standing. Standing to assert a copyright claim is a jurisdictional requirement, and the Court
15 must dismiss an action for lack of subject matter jurisdiction if it determines the plaintiff
16 lacks standing. <u>Lewis v. Casey</u>, 518 U.S. 343, 349 n.1 (1996) ("[S]tanding . . . is
17 jurisdictional and not subject to waiver."); <u>see also</u> <u>Warren v. Fox Family Worldwide</u>, 171
18 F. Supp. 2d 1057, 1063 (C.D. Cal 2001).

19 Though the Court is reluctant to dispose of a case without addressing the merits of the
20 claim, it sees no alternative given the lack of subject matter jurisdiction over the three
21 unregistered paintings and plaintiff's lack of standing as a non-owner of the remaining nine
22 paintings during the time period in question. Besides her late-raised moral rights theory, and
23 inapplicable cases regarding section 202, Plaintiff has presented the Court with no
24 alternative. Though she has known of the ownership requirement since at least February
25 2008 (as demonstrated by the fact that she made arrangements for the prior owners to transfer
26 ownership back to her at this time), no motion to join the prior owners has been presented
27 to this Court. Neither have the prior owners made any motion to intervene. Given that no
28

individual before the Court owned the copyrights in question during the relevant time periods, this case must be dismissed for lack of subject matter jurisdiction.

**D. Plaintiff's Motion for Summary Judgment as to Defendants' Liability**

Because Plaintiff does not have standing to assert this copyright infringement claim, the Court need not reach her motion for summary judgment as to the liability of the defendants. Accordingly, the motion is denied.

**III.    Motion for Sanctions**

Defendants argue that Plaintiff and her attorney should be sanctioned under Rule 11 for failing to reasonably inquire into whether Plaintiff had standing to bring this claim. (Dkt.# 81)  Specifically, they argue that a reasonable attorney would have discovered that Plaintiff had not registered some of the paintings and that she did not own the copyrights for the remaining paintings during the time of the alleged copyright infringement. (Id.)  To support their claim that sanctions is justified, Defendants cite Christian v. Mattel, Inc., 286 F.3d 1118, 1128-29 (9th Cir. 2002), a case that affirmed an award of sanctions against an attorney who filed a complaint alleging copyright infringement where the allegedly infringing work was created six years before the allegedly infringed work. They request that Plaintiff be ordered to pay all of Defendants' attorneys' fees "for having to defend this groundless suit." (Dkt.#81 at 7)

Rule 11 imposes an affirmative duty to conduct a reasonable inquiry into the facts and law before filing any pleading, motion or paper with the court. By filing any such document, a party is representing to the court that "the claims, defenses, and other legal contentions [contained in such documents] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law" and that "the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)-(3).

Though Plaintiff does not provide any explanation for her failure to register the three unregistered paintings before bringing suit, she does explain her lack of ownership of the

- 11 -

1  copyrights during the relevant time period by arguing that present ownership of the
2  copyrights is sufficient to transfer accrued causes of action arising under them. (Dkt.# 82)
3  Though Plaintiff's legal theory ultimately proved to be incorrect as explained above, this
4  Court does not find it is so objectively baseless to qualify as completely frivolous.
5  Moreover, it is the judgment of this Court that the dismissal of this action is sufficient to
6  deter Ms. Giddings and counsel from any future arguably frivolous litigation.

7  **Accordingly,**

8  **IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment and
9  dismissing this case for lack of subject matter jurisdiction.

10  **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Summary Judgment as to
11  Liability of Defendants as moot.

12  **IT IS FURTHER ORDERED** denying Defendant's Motion for Sanctions Against
13  Plaintiff and Counsel.

14  **JUDGMENT ENTERED ACCORDINGLY.**

15  DATED this 21st day of October, 2008.

_____
Mary H. Murgula
United States District Judge